RECEIVED
IN LAKE CHARLES, LA.
JUN - 6 2013
TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ANN NUNEZ, ET AL | : | DOCKET NO. 2:12-CV-630-PM-KK |
| VS. | : | JUDGE MINALDI |
| DOLGENCORP, LLC, D/B/A DOLLAR GENERAL CORPORATION | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 11], filed by the defendant, Dolgencorp, LLC ("Dolgencorp"). The plaintiffs, Ann and Keith Nunez, filed an opposition [Doc. 19] and Dolgencorp then filed a reply [Doc. 26]. Also before the court is a *Daubert* Motion (styled as a "Motion in Limine") to Exclude the Plaintiff's Expert Stephen Killingsworth [Doc. 22], filed by Dolgencorp, which the plaintiffs have opposed [Doc. 35]. Following the filing of the plaintiff's *Daubert* opposition, Dolgencorp also filed a Motion to Strike the plaintiffs' opposition memorandum and attached supplemental affidavit from Killingsworth [Doc. 37], which the plaintiffs opposed [Doc. 47]. For the foregoing reasons, Dolgencorp's Motion to Strike is GRANTED IN PART and DENIED IN PART, Dolgencorp's *Daubert* Motion to Exclude the Plaintiff's Expert Stephen Killingsworth is GRANTED IN PART and DENIED IN PART, and Dolgencorp's Motion for Summary Judgment is DENIED.

1

## FACTUAL BACKGROUND

This case arises from the plaintiff, Ann Nunez's, trip and fall accident at Dolgencorp's Dollar General Store in Grand Lake, Louisiana.[1] The plaintiffs originally filed their complaint in the 38th Judicial District Court for Cameron Parish, Louisiana, and Dolgencorp then removed the case to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2]

On March 5, 2011, Ms. Nunez was shopping at a Dollar General in Grand Lake, Louisiana.[3] Before Ms. Nunez's arrival, Dollar General employees had moved a wooden clothing rack from the parking lot area of the store to the inside of the store, in an area adjacent to the checkout aisle.[4] As Ms. Nunez passed through the entrance/exit aisle of the store, she tripped on the base of the wooden clothing rack, injuring her ankle.[5] The parties have provided pictures of the clothing rack– the rack is supported on all four sides by wheels, and the base of the rack juts out a few inches farther than the merchandise hanging on the rack.[6] This rack had been in the Dollar General store for over a year, and there were no accidents or incidents involving the clothing rack prior to Ms. Nunez's accident.[7]

## LAW & ANALYSIS

I. ***Daubert*** **Motion to Exclude Stephen Killingsworth**

---

[1] Pl.'s Compl., [Doc. 1-1] at ¶ 2.

[2] Not. of Removal, [Doc. 1].

[3] Def.'s Statement of Uncontested Facts to Mot. for Summ. J., [Doc. 11-5] at ¶ 1; Pls.'Statement of Contested Facts in Opp. to Mot. for Summ. J, [Doc. 19-5] at ¶ 1.

[4] Dep. Of Mary Granger, Ex. B to Pls.' Opp. to Mot. for Summ. J., [Doc. 19-2], at p. 12: 13 – 18.

[5] [Doc. 11-5] at ¶ 1; [Doc. 19-5] at ¶ 2.

[6] Photos of Clothing Rack, Ex. B to Def.'s Mot. for Summ. J., [Doc. 11-3].

[7] [Doc. 11-5] at ¶¶ 6 – 8.

2

As the plaintiffs' opposition to Dolgencorp's Motion for Summary Judgment cites Killingsworth's expert report, the undersigned will address Dolgencorp's *Daubert* motion to exclude Killingsworth's testimony first, before turning to the arguments in the Motion for Summary Judgment.

The plaintiffs have retained Killingsworth, a mechanical engineer, to investigate the "circumstances and cause of the accident involving Mrs. Ann Nunez."[8] After reviewing depositions, court documents, photographs from the accident scene, the facts of the accident, and conducting an inspection of the store, Killingsworth rendered a report on April 9, 2013.[9] In his report, he made several conclusions, including:

> 1 - Ms. Nunez fell as the result of a trip hazard. By definition, a trip occurs when one foot is prevented from moving forward by some obstruction or when one foot strikes an obstruction while moving forward. Since Ms. Nunez was moving forward while shopping, the obstruction of her foot by the aisle-side, base support/roller combination of the wood clothes rack resulted in a loss of balance by the momentum of her body to continue forward without support.
>
> 2 - Ms. Nunez's failure to see the trip hazard was not a result of Ms. Nunez's inattentiveness. In a commercial or retail environment, shoppers, including Ms. Nunez, have an expectation that the floors of aisles will not contain obstructions or trip hazards. Unless one is buying floor covering, a stopper's attention will be directed to shelving units, displays or fixtures which are supported within the shelving units, displays or fixture's perimeter or outer boundary.
>
> 3 - The overall design of the wood clothes rack was not supported by proper engineering concepts and practices. The support of the wood clothes rack should have had a perimeter or outer boundary barrier to prevent shoppers from contacting the base support/roller combination of the wood clothes rack which extended over 24 inches into the aisle.
>
> 4 - Dolgencorp employees (personnel) failed to comply with Dolgencorp Employee Safety Handbook, specifically maintaining aisles free of debris and any other slip or trip hazards at all times. Further, the day of Ms. Nunez's accident,

---

[8] Killingsworth Expert Report, Ex. A to Def.'s Mot. in Limine, [Doc. 22-2], at p. 1.

[9] *See generally id.*

Dolgencorp employees failed to properly relocate the wood clothes racks to an alternate aisle, as described in Ms. Mary Granger's deposition.[10]

In Dolgencorp's motion, it asserts that it is not attacking Killingsworth's qualifications as a mechanical engineer, but rather advances the arguments that: (1) Killingsworth's expert testimony is unnecessary, as he is testifying on matters that the jury can assess using their own common experience and knowledge; (2) Killingsworth failed to conduct a scientific analysis and simply relied on his own *ipse dixit* to come to his conclusions; and, (3) Killingsworth's methodology is unreliable and unrelated to his training as an engineer.

### A. Dolgencorp's Motion to Strike Killingsworth's Supplemental Affidavit should be granted in part and denied in part, because the affidavit contains some opinions and materials not found in the original report

After Dolgencorp filed its *Daubert* motion, the plaintiffs responded with an opposition brief. In their opposition, they state that because Dolgencorp never took Killingsworth's deposition, it was necessary for them to attach a supplemental affidavit from Killingsworth, clarifying his positions.[11] Dolgencorp responded a few days later by filing a Motion to Strike the opposition memorandum and supplemental affidavit, arguing that the plaintiffs were "attempting to benefit from the fact that deposition dates [for Killingsworth] were never provided" by plaintiffs' counsel, and that the supplemental affidavit contained brand new reference materials[12] and new opinions.[13] Accordingly, under Fed. R. Civ. P. 26(a)(2)(B), which governs the

---

[10] *Id.* at pp. 7 – 9.

[11] Mem. in Opp. to Mot. for Summ. J., [Doc. 35], at p. 2.

[12] Dolgencorp correctly notes that, in the original expert report, Killingsworth relied on two reference materials: (1) Dollar General's Employee Safety Handbook and (2) Safety Engineering, 3rd Edition, Gilbert Marshall, American Society of Safety Engineers, Des Plaines, IL, 2000, ISBN:1-885581-28-9. In the supplemental affidavit, Dolgencorp notes that Killingsworth cited three new reference materials: (1) Product Safety Engineering for Managers: A Practical Handbook and Guide, (2) Safety Through Design, and (3) Engineering Design for Safety.

[13] Dolgencorp argues that, in the supplemental affidavit, Killingsworth's new opinions include: (1) the unsupported assumption that the wooden rack was designed by Dolgencorp or under Dolgencorp's direction and control; (2) the

4

timeliness of disclosure of expert reports, this supplemental affidavit should be excluded because it was submitted five weeks after the plaintiff's expert report deadline of March 27, 2013. The plaintiffs counter that Killingsworth's supplemental report is simply a clarification of his earlier positions, and provides more detail on his methodology in coming to his conclusions.

Among other things, an expert's report must contain a "complete statement of all opinions the witness will express," and "the facts and data considered by the expert." Fed. R. Civ. P. 26(a)(2)(B)(i – ii). According to Rule 26(a), "a report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Beane v. Utility Trailer Manufacturing Co.*, No. 2:10-CV-781, --- F.Supp. 2d ---, 2013 WL 831519 (W.D. La., Mar. 6, 2013) (citing *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 268 (6th Cir. 2010)). On the eve of summary judgment, far past the expert report deadline, Killingsworth cites three brand new reference materials and a few opinions not found in his initial report. The plaintiffs cannot simply delay Killingsworth's deposition date and then, facing summary judgment, present new reference materials and opinions without the benefit of Dolgencorp deposing Killingsworth on these new materials and opinions.

Turning to the affidavit, while it is possible that Killingsworth's opinion that the wooden racks were constructed "without any consideration for design safety principles or safety in use" and his opinion that the wooden rack was designed by Dolgencorp or under Dolgencorp's

---

wooden rack was not "designed and constructed in accordance with fundamental engineering concepts and practices, specifically the 'Order of Design Precedence,' shown in Figure 1." (Figure 1 was not included in the original report); and, (3) the wooden racks were constructed "without any consideration for design safety principles or safety in use."

direction and control could be considered clarifications of his original report,[14] his opinion that the rack did not comply with certain engineering principles (from excerpts from unnamed manuals referenced for the first time in the supplemental affidavit) is entirely new. Accordingly, the court will allow Killingsworth to testify about the two former opinions mentioned *supra* and will consider these opinions in the instant summary judgment motion, but will not consider or allow Killingsworth's affidavit testimony on whether or not the clothing rack design complied with the "Order of Design Precedence" and "Principles of Design" included as Figures 1 and 2 in his supplemental affidavit.[15]

Turning to the three new reference materials, the undersigned finds that these should be excluded from evidence, both because Killingsworth could have easily included this data in his initial report, and because the materials' late inclusion would be harmful to Dolgencorp on the eve of summary judgment and weeks before trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless.").

**B. Killingsworth's report does not intrude on the common sense of the jurors on the issue of clothing rack design, but does intrude on the common sense of jurors on the issue of adherence to Dollar General's safety standards**

---

[14] Killingsworth's opinion in his original expert report tracks with the "without consideration for design safety principles or safety in use" opinion in his supplemental affidavit, because he states in conclusion 3 of the original report that "[t]he overall design of the wood clothes rack was not supported by proper engineering concepts and practices. . ." Killingsworth Expert Report, *supra* note 8, at p. 1. While it is a closer call whether Killingsworth's conclusion that Dolgencorp created the clothing rack and/or the clothing rack was under Dolgencorp's direction and control can be gleaned from his initial report, this conclusion is also supported by deposition testimony from two different Dollar General employees, who testified that Dollar General had used the clothing rack for as long as they had worked there. *See* Deposition of Mary Jane Granger, Ex. B to Pls.' Opp. to Mot. for Summ. J., [Doc. 19-2] at p. 25; *see also* Deposition of Angel Roy, Ex. C to Pls.' Opp. to Mot. for Summ. J., [Doc, 19-3], at p. 25. Thus, this information will come in from other sources as well.

[15] Supp. Affidavit of Stephen Killingsworth, Ex. B to Pls.' Opp. to *Daubert* Motion, [Doc. 35-2], at pp. 5 – 7.

6

Turning to the substance of the *Daubert* motion, Dolgencorp first argues in its motion that the matters Killingsworth will testify about do not require expert testimony, as they are within the common knowledge of a lay juror. The plaintiffs counter that Killingsworth's testimony is not within a lay juror's wheelhouse, as he is testifying specifically on whether "'[w]ood, non-commercial, roller-mounted clothes racks used to display sale clothes' posed a tripping hazard in the manner it was designed, constructed, and utilized by the store employees."

Under Fed. R. Evid. 702, which governs the admissibility of expert testimony, the evidence offered by an expert witness must be both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174 (1999). On the relevance prong, the inquiry concerns whether the expert's testimony helps the trier of fact understand the evidence. *Daubert*, 509 U.S. at 591, 113 S.Ct. at 2795 – 96. The Fifth Circuit has held that, if a jury can "adeptly assess [the] situation using only their common experience and knowledge," the proffered expert testimony is irrelevant, as it will not assist the trier of fact. *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 – 51 (5th Cir. 1990).

As recently noted in a different opinion from this court, "[u]nder the Advisory Notes for Fed.R.Evid. 702, '[w]hether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier.'" *Henry v. O'Charley's, Inc.*, No. 2:11-1330, 2013 WL 837178 (W.D. La., Mar. 6, 2013) (finding that expert testimony from an architect was unnecessary for slip and fall case in which the architect would testify about slipping hazards in a high traffic area of restaurant, because this was within common knowledge of lay jurors). The cases cited by Dolgencorp offer further support that expert testimony is unnecessary in cases in which the expert's issue is within the common knowledge of a lay juror. *See, e.g., Oatis v.*

7

*Diamond Offshore Mgmt. Co.*, No. 09-3267, 2010 WL 936449, *2 (E.D. La., Mar. 12, 2010) (excluding a plaintiff's expert witness testimony on whether a defendant violated safety policies because these issues were within common knowledge of lay jurors); *Roy v. Florida Marine Transporters, Inc.*, No. Civ.A.03-1195, 2004 WL 551208, *3 (E.D. La., Mar. 18, 2004) (excluding in part a plaintiff's expert witness testimony on whether absence of non-skid material on boat deck surface violated safety standards because these issues were within common knowledge of lay jurors).

As noted *supra*, based on Killingsworth's report, the plaintiffs offer Killingsworth to testify on: (1) whether the bottom of the wooden rack was a tripping hazard; (2) whether it was reasonable for Ms. Nunez to not notice the rack and trip on it; (3) whether the rack could have been designed differently so that the base area did not jut out; and, (4) whether the store employees violated their own safety standards by not checking this rack. The plaintiffs are correct in arguing that, while most lay jurors will have some experience with retail clothing racks, they may not know that, as Killingsworth notes in his expert report, some clothing racks are intentionally designed to keep base supports within the rack's perimeter, in order to avoid a tripping hazard. This is particularly important in this case, as the plaintiffs are alleging that the base support of the clothing rack, which jutted out into the aisle, was the ultimate cause of Ms. Nunez's injury. Related to this, Killingsworth's testimony that the specific design of the clothing rack base created a tripping hazard would similarly be helpful to the trier of the fact. Thus, the court finds that Killingsworth's testimony would be helpful to the trier of fact on the design issue/tripping hazard issue (conclusions 1 and 3 in his expert report).

On the safety standards issue (conclusion 4 in his report), however, the undersigned finds that Killingsworth's testimony would not help the trier of fact. On cross-examination, counsel

8

for the plaintiffs could easily elicit from Dollar General employees what the safety procedures for the store were at the time of Mrs. Nunez's accident, and how the employees handled the clothing rack in the store. Jurors themselves could then assess whether, based on this information, the employees followed the appropriate safety standards in positioning the clothing rack in the checkout aisle. Killingsworth, as a mechanical engineer, would offer little in helpful testimony on whether employees obeyed their own safety standards. Accordingly, his testimony on conclusion 4 in his expert report will be excluded.

### C. Killingsworth's methodology is not sufficiently reliable on the issue of whether Mrs. Nunez's inattentiveness caused the accident, but is sufficiently reliable on whether the clothing rack was a tripping hazard/not properly designed

Dolgencorp next attacks the reliability of Killingsworth's methodology in coming to his conclusions. It notes that Killingsworth did not outline any specific scientific analysis for his conclusions (1) that the clothing rack was a tripping hazard; (2) that Mrs. Nunez's failure to see the base of the clothing rack was not a result of her inattentiveness; or, (3) that the clothing rack design was not supported by proper engineering concepts and practices. The plaintiffs respond that Killingsworth did use the proper methodology: he analyzed pictures of the clothing rack (he could not see the original rack, as apparently it was destroyed soon after Mrs. Nunez's accident) and compared them to other racks in the store. He also made measurements of the accident scene and reviewed a safety design manual.

An expert's self-proclaimed accuracy is insufficient. *See Kumho,* 526 U.S. at 157, 119 S.Ct. at 1178. As the Supreme Court has stated, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997). Instead, whether an expert's testimony is reliable requires "an assessment of

9

whether the reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M & S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir.1999). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). It is then the district court's responsibility to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152, 119 S.Ct. at 1176; *Dart v. Kitchens Bros. Mfg. Co.,* 253 Fed. App'x. 395, 397 – 98 (5th Cir. 2007). It should be noted, however, that a trial judge must not apply the reliability factors too stringently to "transform a *Daubert* hearing into a trial on the merits." *Dart,* 253 Fed. App'x. at 398.

A court assessing a *Daubert* motion may address four pertinent, though not dispositive, considerations in determining the admissibility of an expert's testimony. These considerations are (1) whether the theory or technique can be or has been tested (2) whether the theory or technique has been subjected to peer review and publication (3) the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and, (4) the general acceptance by the relevant scientific community. *Daubert,* 509 U.S. at 593 – 94, 113 S.Ct. at 2796 – 97.

In this instance, the traditional factors considered in a *Daubert* motion are of little help to ascertain whether Killingsworth's methodology was reliable, as *Daubert* typically addresses novel scientific evidence. In contrast, Killingsworth's analysis is of a fairly straightforward, technical nature. *See Wisdom v. TJX Companies, Inc.,* 410 F.Supp. 2d 336, 342 (D. Vt. 2006) (finding that the four factors in *Daubert* test were inapplicable to an expert's testimony as to

whether a clothing rack was a tripping hazard, because the opinions were based on "technical rather than scientific [evidence] and because they [did] not involve novel theories").

Reviewing Killingsworth's report and conclusions, however, the undersigned cannot say that his methodology is sufficient to support his conclusions on the reasonableness of Ms. Nunez's actions (conclusion 2 in his report). Killingsworth's conclusion that Ms. Nunez's trip was not caused at all by her inattentiveness seems unduly speculative based on the evidence, particularly in light of Mrs. Nunez's testimony that she was not paying attention as she walked through the aisle.[16] While Killingsworth comes to this conclusion by noting that it is normal for shoppers to pay attention to the merchandise at eye-level and not obstacles on the floor, his opinion also comes dangerously close to a legal conclusion: essentially, assign no comparative fault to Ms. Nunez because it was entirely reasonable for her to not notice the clothing rack. These issues indicate that conclusion 2 of Killingsworth's report must be excluded.

On the tripping hazard/safety design issue (conclusions 1 and 3 in his report), the undersigned finds that Killingsworth's methodology is sufficient to survive a *Daubert* attack. Killingsworth reviewed photographs of the clothing rack at issue, other clothing racks in the Dollar General Store, and a safety design manual, in order to come to his conclusion that the clothing rack design was not supported by proper engineering concepts. While Killingsworth could have fortified his testimony by *timely* supplementing his expert report with additional texts, statistics, and studies on clothing rack design, these weaknesses would be more properly addressed by thorough cross-examination by Dolgencorp's counsel. *See Santos v. Posadas De*

---

[16] During Mrs. Nunez's deposition, she was asked about the clothing rack:

> Defense Counsel: "Did you see the rack with clothes on it before you fell?
> Ms. Nunez: "I didn't, no."

Ms. Nunez Deposition, Ex. D to Opp. to Mot. for Summ. J., [Doc. 19-4], at p. 86: 12 – 14.

11

*Puerto Rico Assocs., Inc.,* 452 F.3d 59, 64 (1st Cir. 2006) (finding that an expert's methodology in coming to his conclusion that a defect in a hotel's pool area was the cause of the plaintiff's fall was sufficiently reliable because he visited the premises, measured the steps the plaintiff tripped on, examined photographs of the area, reviewed codes and standards, made calculations, and drew upon his extensive friction testing of various tiles).

Accordingly, Killingsworth will be allowed to testify and present evidence about conclusions 1 and 3 offered in his expert report, but will be precluded from testifying on conclusions 2 and 4.

## II.  Motion for Summary Judgment

Next, the court addresses Dolgencorp's Motion for Summary Judgment. In its motion, Dolgencorp makes two main arguments: (1) the plaintiffs cannot meet their burden of proving that the clothing rack created an unreasonable risk of harm and (2) the plaintiffs cannot meet their burden of proving that Dolgencorp's employees did not exercise reasonable care.

Turning to the relevant standard, a court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

The parties agree that the plaintiff's claims are governed by La. Rev. Stat. § 9:2800.6, which provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care.

Failure to prove any of the requirements of the above statute will prove fatal to a plaintiff's case. *Richardson v. Louisiana-1 Gaming*, 10-262 (La. App. 5 Cir. 12/14/10); 55 So. 3d 893, 895 (citing *Harrison v. Horseshoe Entertainment*, 36,294 (La. App. 2 Cir. 8/14/02), 823 So.2d 1124).

### A. Fact issues remain on whether the clothing rack presented an unreasonable risk of harm and the risk was "reasonably foreseeable" under § 9:2800.6(B)(1)

Dolgencorp first contests that there is no genuine dispute of material fact as to whether the clothing rack created an unreasonable risk of harm that was reasonably foreseeable. "The mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition." *Scherer v. PNK (Bossier City), Inc.* 47, 901 (La. App. 2 Cir. 3/20/13); --- So. 3d --- (citing *Milton v. E&M Oil Co.*, 45,528 (La. App. 2 Cir. 9/22/10), 47 So. 3d 1091, 1095).

In assessing whether a condition creates an unreasonable risk of harm, courts in Louisiana apply a four part risk-utility balancing test. This test requires consideration of: (1) the utility of the condition; (2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition; (3) the costs of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility, or whether it is dangerous by nature. *Dowdy v. City of Monroe*, 49,693, 78 So. 3d 791 (La. App. 2 Cir. 11/2/11).

### 1. Utility of the clothing rack

Turning to the first factor, the parties do not produce much evidence on the utility of the clothing rack, although it is apparent that the clothing rack's utility in the Dollar General Store was to present clothing merchandise to customers at the store. The wheeled base on the rack allowed store employees to easily transport the clothing rack to different areas of the store as needed. This factor thus advises against a finding of a genuine dispute of material fact as to unreasonable dangerousness.

### 2. Likelihood and magnitude of harm

Turning to the second prong, the parties focus almost exclusively on whether the condition was obvious to store patrons. This prong of the test also indicates whether the risk was "reasonably foreseeable" under § 9:2800.6(B)(1). Typically, courts in Louisiana have held that,

when the condition is open and obvious to all, it does not present an unreasonable risk of harm. *See, e.g., Hays v. Wal-Mart Louisiana*, no. 3:09-01003, 2010 WL 4386828, *1 (W.D. La., Oct. 28, 2010) (holding that the plaintiff had not met their burden of proving box in shopping aisle created an unreasonable risk of harm because it was clearly visible); *Taylor v. Wal–Mart Stores, Inc.,* No. 05-1346-A, 2006 WL 1476031, *2 (W.D. La. May 23, 2006) (holding that the plaintiff had not met their burden in proving that pallet in shopping aisle created an unreasonable risk of harm because it was plainly visible); *Pitre v. La. Tech. Univ.*, 95–1466 (La.5/10/96); 673 So.2d 585) (holding that "[a] potentially dangerous condition that is open and should be obvious to all is not unreasonably dangerous.")); *Durman v. Billings,* 38,514 (La. App. 2 Cir. 5/12/04); 873 So.2d 872) (holding that "[i]f the risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable."). The court notes, however, that this factor is not dispositive: "the open and obvious nature of the [hazard] is merely another factor to be weighed in the in the risk-utility balance." *Joseph v. City of New Orleans*, 2002-1996 (La. App. 4 Cir. 3/5/08); 842 So. 2d 420, 424.

Dolgencorp relies on two main cases to show that the base of the wooden clothing rack did not present an unreasonable risk of harm. First, it cites *Ernest v. Dillard Department Stores, Inc.*, (La. App. 4 Cir. 1997); 703 So. 2d 1380, a case in which a Dillard's customer injured her ankle on a clothing shelf. On appeal, the Louisiana Fourth Circuit reversed the trial court's finding that there was a fact issue as to whether the shelf presented an unreasonable risk of harm, finding that the plaintiff had failed to meet her burden on whether the "stationary, plainly visible" shelf created an unreasonable risk of harm. *Id.* at 1382. There is one clear difference between the *Ernest* case and this case, however: in *Ernest*, the court noted that while the plaintiff had "made allegations concerning the defective nature of the clothing shelf . . . her deposition

15

fails to support these allegations. In fact, [the plaintiff] admitted in her deposition that she did not know how the clothing shelf was defective." *Id.* In contrast, in this case, the plaintiffs have presented evidence in the form of expert testimony from Killingsworth, who will testify that the clothing rack's design was unreasonably dangerous because the base support for the rack jutted out several inches into the aisle way, and that there were other available designs that would have contained the base support within the perimeter/outer boundary of the rack.

Dolgencorp also analogizes this case to *Taylor v. Wal-Mart Stores,* a case in which the Western District of Louisiana's Judge Drell found that a customer who had tripped on a pallet in the middle of a merchandise aisle at Wal-Mart had not met his burden in showing that the pallet created an unreasonable risk of harm. *Taylor*, 2006 WL 1476031 at *2. This case is also distinguishable, however: Judge Drell held in *Taylor* that "[a] pallet filled with merchandise in the center of an aisle is a condition any customer would reasonably expect to encounter, and it presents no inherent hazard to the customer exercising reasonable care." *Id.* In this case, in contrast, the condition is the base of a clothing rack, far less noticeable and expected than a large pallet sitting in the middle of a shopping aisle.

The plaintiffs note that this case is more analogous to the Louisiana Third Circuit's *Broussard v. Family Dollar Store*, 2005-645 (La. App. 3 Cir. 12/30/05); 918 So. 2d 1148. In *Broussard,* the Louisiana Third Circuit found that the trial court had not erred in finding that the placement of three hand-held shopping baskets in the checkout aisle of a store created an unreasonable risk of harm. *Id.* at 1151. The plaintiffs place particular emphasis on the court's finding that "a shopper's attention is usually directed to merchandise, not the floor . . . Something on the floor which may cause a shopper to trip and fall when her attention is directed toward her purchase is a hazard." *Id* (citations omitted). In this case, the same premise would

apply: Ms. Nunez testified that she was focusing on some merchandise on a nearby shelf when she struck the base of the clothing rack.

In sum, reviewing all of the evidence, the undersigned is satisfied that the plaintiffs have created a dispute of material fact on whether this condition was open, obvious and reasonably foreseeable. This factor thus cuts in favor of a finding of genuine issue of genuine dispute of material fact as to unreasonable dangerousness.

### 3. Costs of preventing harm

Turning to the third factor, neither party presents any evidence as to on how much more expensive it would have been for the store to replace the clothing rack with a different clothing rack. Presumably, because there were other clothing racks in the store, the store employees could have fairly easily switched out the wooden clothing rack for a different rack whose base did not jut out as much into the aisle way. This factor this points in favor of a finding of a genuine dispute of material fact as to unreasonable dangerousness.

### 4. Nature of the plaintiff's activity in terms of social utility

Finally, on the fourth factor, the plaintiff admits that she was not paying attention to the floor as she walked through the aisle because her attention was drawn to a candy display on one of the shelves. The undersigned notes, however, that, related to the second prong, a customer is not expected to keep her eyes on the floor of a store as she walks through, particularly when her attention is directed to merchandise on the shelf. This factor thus cuts in favor of a finding of a genuine dispute of material fact as to unreasonable dangerousness.

Viewing all of the factors together, the undersigned finds that the plaintiffs have met their burden of showing a genuine dispute of material fact as to whether the clothing rack base created an unreasonable risk of harm which was reasonably foreseeable.

### B. Fact issues remain on whether the Dollar General employees exercised reasonable care under § 9:2800.6(B)(3)

While Dolgencorp's main argument is that the clothing rack did not present an unreasonable risk of harm, it also alleges that the plaintiffs cannot meet their burden as to whether the Dollar General employees exercised reasonable care. Dolgencorp provides affidavit testimony from a Dollar General employee that the store had not received any other complaints about the clothing rack in the year it had been in the store, and thus Dolgencorp did not have constructive notice of the "relative risk of injury."[17] Essentially, Dolgencorp joins the second and third prongs of § 9:2800.6(B)[18] for this argument.

The plaintiffs counter that they do not have to produce evidence of constructive notice because Dollar General created the condition that presented the unreasonable risk of harm. This contention is correct: this is not a case in which it is possible that a customer created the hazard, thus requiring the merchant to have constructive or actual knowledge. *See Latter v. Sears Roebuck Co.*, No. Civ.A. 03-1167, 2004 WL 242479 (E.D. La., Feb. 5, 2004) (finding that a plaintiff did not have to prove actual or constructive knowledge under § 9:2800.6(B)(2) in trip and fall case because the merchant created the hazardous condition by leaving a foldout table lying in the aisle). In this instance, the plaintiffs have presented evidence that Dollar General used the clothing rack[19] and that it was up to the employees to decide where to locate the

---

[17] Aff. of Angel Roy, Ex. C to Mot. for Summ. J., [Doc. 11-1].

[18] Section 9:2800.6(B) provides, *inter alia*:

> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care.

[19] Deposition of Mary Jane Granger, Ex. B to Pls.' Opp. to Mot. for Summ. J., [Doc. 19-2] at p. 25; *see also* Deposition of Angel Roy, Ex. C to Pls.' Opp. to Mot. for Summ. J., [Doc, 19-3], at p. 25.

clothing rack in the store.[20] Thus, they have met the second requirement of § 9:2800.6(B) by presenting evidence that Dollar General created the condition of the clothing rack in the checkout aisle.

Related to this, a genuine dispute of material fact remains as to whether the Dollar General employees exercised reasonable care with the clothing rack. The plaintiffs have presented evidence that Dollar General employees decided where to place the wooden clothing rack in the store, and that there were other, potentially more open, areas where the rack could have been moved. While Dolgencorp has produced evidence that the store had never received complaints about the clothing racks before, part of the inquiry here turns on where the clothing rack was located in the store *on the day of Ms. Nunez's accident*, and whether it was appropriate or safe for the Dollar General employees to place the clothing rack in that location. Absent further evidence from the parties, summary judgment declaring that the employees exercised reasonable care with regards to the placement of the clothing rack on that day is premature.

## CONCLUSION

In conclusion, the court finds that Dolgencorp's Motion to Strike Killingsworth's Supplemental Affidavit should be granted to the extent the affidavit contains new opinions and materials not found in the original expert report, but should be denied as to the two opinions which appear to be clarifications of his earlier report. Dolgencorp's *Daubert* motion to exclude the testimony of Killingsworth should similarly be granted in part and denied in part. Killingsworth may testify as to whether the clothing rack was a tripping hazard and whether it was properly designed (conclusions 1 and 3 in his report), but may not testify as to whether the Dollar General employees followed their own safety procedures and whether Mrs. Nunez's

---

[20] Deposition of Mary Jane Granger at p. 12; *see also* Deposition of Angel Roy at p. 27.

accident was caused in any way by her own inattentiveness (conclusions 2 and 4 in his report). Finally, Dolgencorp's Motion for Summary Judgment will be denied, as the plaintiffs have created a fact issue as to whether the clothing rack was unreasonably dangerous and whether Dolgencorp exercised reasonable care.

Lake Charles, Louisiana, this 6th day of June 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

20